[Nos. 36196, 36434, 36471. Department One. January 31, 1963.]

*In the Matter of the Dissolution of* A. B. C. ROOFING & SIDING, INC.

SIDNEY C. VOLINN, *as Receiver, Appellant,* v. UNITED PACIFIC INSURANCE COMPANY *et al., Respondents.*

*In the Matter of the Dissolution of* A. B. C. ROOFING & SIDING, INC.

SIDNEY C. VOLINN, *as Receiver, Appellant,* v. UNITED PACIFIC INSURANCE COMPANY *et al., Respondents.*

*In the Matter of the Dissolution of* A. B. C. ROOFING & SIDING, INC.

SIDNEY C. VOLINN, *as Receiver, Respondent,* v. UNITED PACIFIC INSURANCE COMPANY *et al., Appellants.**

*Reported in 378 P. (2d) 453.

*Alexander Wiley* and *Sidney C. Volinn,* attorneys for Sidney C. Volinn.

*Jack E. Hullin* and *Hullin, Ehrlichman, Carroll & Roberts,* attorneys for United Pacific Insurance Company.

*Holman, Mickelwait, Marion, Black & Perkins, John W. Ellis,* and *Douglas P. Beighle,* attorneys for Zellerbach Paper Company.

*Rosling, Williams, Lanza & Kastner* and *Joseph J. Lanza,* attorneys for Reynolds Metals Company.

ROSELLINI, J.—These cases involve conflicting claims to a fund. The undisputed facts are these:

A. B. C. Roofing & Siding, Inc., hereafter referred to as the contractor, entered into an agreement to construct certain hangars for the U. S. Navy Department. The United Pacific Insurance Company, hereafter referred to as the surety, issued its surety bond pursuant to the Miller Act (40 U.S.C. § 270a) on behalf of the contractor, as principal, and running to the United States of America as obligee.

During performance of the contract, the contractor became involved in financial difficulties, and, in performance

of its obligation, the surety advanced the sum of $36,126.68, all of which was used in completion of the contract.

The contract was completed on March 10, 1959, and a receiver was appointed for the contractor on May 4, 1959. The cost of completion, paid by the surety, plus the sums owed the suppliers, exceeded the balance due on the contract.

A dispute arose as to who was entitled to the final payment owing on the contract, and the surety filed its claim in the receivership proceedings, claiming that it was entitled to possession of the contract balance to reimburse itself for funds advanced and for payment of job creditors. The receiver filed his affidavit opposing the right of the surety to possession of the money. Pending a hearing to determine the rights of the parties, a stipulation was entered into which provided, insofar as it is material to this appeal, that the receiver would receive and hold the money until he had obtained an adjudication of the rights of the parties.

In accordance with the terms of the stipulation, the receiver obtained an order of the court, directing all creditors of the corporation who claimed any right to the specific fund, as differentiated from the general assets of the corporation, to file their claims. The order further directed that all creditors who failed to assert such claims should be barred from participation in payments to be made from it. Thereafter the receiver filed his report, listing the names of creditors who had filed claims pursuant to the order.

The matter came on for trial, and the lower court held that the respondents Zellerbach Paper Company, Reynolds Metals Company, and Zurich Insurance Company, as suppliers of materials and services, had first priority in the fund, and that the balance of the fund belonged to the surety, under its right of subrogation. From the order entered on this determination, the receiver has appealed.

■ At the time of the appeal, the state of the law on the question presented here was in some doubt. It has since been clarified by the United States Supreme Court in the case of *Pearlman v. Reliance Ins. Co.*, 371 U. S. 132, 9 L. Ed.

(2d) 190, 83 S. Ct. 232. The question is: Do laborers and materialmen (and their subrogees) have priority over general creditors in moneys due from the government on a contract entered into under the Miller Act? The Supreme Court answered yes.

Having observed that there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed, and that at least two prior decisions of the court had held that there is a security interest in a withheld fund like this, to which the surety is subrogated (*Prairie State Bank v. United States,* 164 U. S. 227, 41 L. Ed. 412, 17 S. Ct. 142 (1896) and *Henningsen v. United States Fidelity & Guar. Co.,* 208 U. S. 404, 52 L. Ed. 547, 28 S. Ct. 389 (1908)), the court held that the later case of *United States v. Munsey Trust Co.,* 332 U. S. 234, 91 L. Ed. 2022, 67 S. Ct. 1599 (1947), had not changed this rule. In so holding the court ruled, *sub silentio,* that the inferior federal courts which had held that the rule of the earlier cases had been abrogated by certain language in the *Munsey* case, were in error.

In summation, the Supreme Court said:

"We therefore hold in accord with the established legal principles stated above that the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it. . . ."

The trial court correctly held that the suppliers had a prior right to be paid out of the fund, and that the surety was entitled to the remainder of the fund, since its claim exceeded the amount remaining.

In the second of the cases which have been consolidated before this court, No. 36434, the receiver contends that the court erred in placing this fund beyond the reach of tax claimants.

■ The holders of tax claims against the receivership estate were notified of the hearing on the disposition of the fund and did not choose to file their claims. Therefore, assuming they had any rights in the fund, without so deciding, they have waived such rights. That it was their intention to waive any claims that they might have is made manifest by the fact that they have not appealed from the order. It is not a proper function of a receiver to press claims against the estate. It is his duty to collect, administer, and disburse the property of the estate as the court shall direct (see RCW 7.60.010, 040). The receiver is here in this case as a mere volunteer; consequently, no fee should be allowed for this work.

■ In the third of the consolidated cases before us, the surety challenges the correctness of the trial court's judgment in awarding a receiver's fee of $7,000 and an attorney's fee in a like amount, to be paid out of the special fund. It is the position of the surety, and with this we agree, that payment should be made out of the fund for only such portions of the efforts of the receiver and his attorney as were directed to the administration of the fund itself and the securing of an adjudication concerning its proper disposition. Only a comparatively small amount of their services was directed toward this end. The bulk of their efforts was expended in advocacy of the receiver's position that the fund belonged to the receivership estate. This advocacy in no way benefited the parties who owned the fund, and they should not be required to pay for it. This is in accord with the terms of the stipulation, which provided:

" . . . that said fund shall only be liable for costs of administration of said receivership to the extent that said receiver is obligated to administer said fund and not for general administration costs other than it concerns this specific fund."

The judgment fixing the fee of the receiver and his attorney is reversed; and the cause is remanded for the purpose of determining their fees in accordance with the views herein expressed.

No fee is to be paid in cause No. 36434.

The question whether the receivership estate is obligated to pay the receiver and his attorney for services rendered to it for their unsuccessful attempt to obtain the fund, is not before us and we do not express any opinion thereon.

In all other respects the judgment is affirmed.[1]

HILL, WEAVER, and HUNTER, JJ., concur.

April 30, 1963. Petition for rehearing denied.

[1] In all fairness to the trial judge, it must be noted that another department of the superior court fixed the fees.